People v Reynoso (2024 NY Slip Op 00463)

People v Reynoso

2024 NY Slip Op 00463

Decided on February 01, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 01, 2024

Before: Manzanet-Daniels, J.P., Kern, Scarpulla, Rosado, O'Neill Levy, JJ. 

Ind. No. 5219/99 Appeal No. 1581 Case No. 2019-04763 

[*1]The People of the State of New York, Respondent,
v
Vicente Reynoso, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Nathan R. Brown of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Gamaliel Marrero of counsel), for respondent.

Order, Supreme Court, Bronx County (Raymond L. Bruce, J.), entered on or about October 25, 2019, which adjudicated defendant a level three sexually violent offender pursuant to the Sex Offender Registration Act (SORA) (Correction Law art 6-C), unanimously reversed, on the law, without costs, and the matter remitted for further proceedings in accordance herewith.
The SORA court improperly assessed 20 points under factor 13 for unsatisfactory conduct, including sexual misconduct, while confined. The point assessment was based on a Tier II disciplinary infraction incurred by defendant for stalking a female teacher at the correctional facility after he sent a note to her stating, "When I come to your class I feel something in my heart that I am unable to express. Good morning. God bless you." Contrary to the court's determination, DOCCS's categorization of stalking as a sex offense does not compel a finding that the conduct underlying defendant's Tier II violation involved sexual misconduct. Although stalking is classified as a "sex offense" under DOCCS's Institutional Rules of Conduct, the rule prohibiting stalking, Rule 101.22, plainly encompasses behavior that is also not sexual in nature (7 NYCRR 270.2[B][2][v]). It defines stalking as "conduct directed at a specific employee, visitor or other person where the incarcerated individual knows, or reasonably should know, that such conduct is likely to cause reasonable fear of material harm to the physical health, safety or property of such person" (id.). Accordingly, DOCCS's classification of stalking as a sex offense does necessarily mean that an infraction for stalking involved inappropriate sexual behavior so as to require an assessment of 20 points under factor 13 (see People v Dilillo, 162 AD3d 915, 917 [2d Dept 2018], lv denied 32 NY3d 905 [2018]).
Because, without the 20 points, defendant's total point assessment would have been 100, rendering him a presumptive risk level two offender, we remit the matter to the SORA court for a determination of whether an upward departure is warranted (see People v Weber, 40 NY3d 206 [2023]). In Weber, the Court of Appeals upheld the Appellate Division's remittal of the case for a determination of whether an upward departure was proper where, as here, a reversal of certain point assessments resulted in a drop in the defendant's presumptive risk level from a level three to a level two. It held that remittal was proper even though the People did not argue at the SORA hearing that an upward departure was warranted in the event the court found that defendant was a level two offender. In doing so, the Court explicitly confined its holding to the SORA context, noting that the statute's "paramount concern" was "an accurate determination of the risk a sex offender poses to the public" (id. at 216 [internal quotation marks omitted]), and observing that it employs a "sequential structure" under which "a SORA court cannot assess a departure request until an offender's [*2]presumptive risk level has been determined" (id. at 215). The Court concluded that "[c]urbing the Appellate Division's power to remit for consideration of departure requests when it disagrees with the hearing court's point assessment and changes an offender's presumptive risk level would undermine SORA's objective and unduly constrain the Appellate Division's authority to order appropriate remedial action" (id. at 216).
We further conclude that the rationale of Weber is sufficiently broad to authorize consideration, upon remittal, of the People's two alternative arguments for a presumptive level three adjudication, even though raised for the first time on appeal: (1) that defendant's conduct with regard to the teacher constituted sexual misconduct and (2) that, at the very least, 10 points should have been assessed for defendant's general unsatisfactory conduct while confined. These arguments implicate the same core purposes of SORA as the upward departure request and, as with that request, the People had no compelling incentive to raise the arguments before the SORA court in light of the court's acceptance of their argument that sexual misconduct was conclusively established based on DOCCS's classification of stalking as a sex offense.
Upon remittal, the SORA court should first consider whether defendant's note to the teacher constituted sexual misconduct, justifying a 20-point assessment, irrespective of DOCCS's classification of the prohibition against stalking. If the court concludes that the 20-point assessment is unwarranted, it should then consider whether clear and convincing evidence supports a finding that defendant's conduct while incarcerated was unsatisfactory, in which case he would still be a presumptive level three offender.
Finally, if the court answers both of those questions in the negative, resulting in a presumptive level two designation, it should determine whether the facts support an upward departure to a level three adjudication.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 1, 2024